******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAISY G. BATISTA *v.* ANGEL L. CORTES
(AC 43244)

Bright, C. J., and Lavine and Alexander, Js.*

*Syllabus*

The defendant filed a motion to modify custody of the parties' minor child. After a hearing, the court denied the motion, determining that it was in the best interests of the child for her primary residence to remain with the plaintiff. On appeal, the defendant claimed that the trial court erred in denying his motion to modify custody and in failing to examine his alleged overpayment of child support. *Held*:

1. The trial court did not err in denying the motion to modify custody of the parties' minor child because it determined that it was in the child's best interests for her primary residence to remain with the plaintiff: the court properly responded to allegations of the plaintiff's use of corporal punishment against the child by referring the matter to the Department of Children and Families and appointing a guardian ad litem, who participated in the hearing on the motion, and there was nothing in the record to support the defendant's allegation that the court failed to consider the plaintiff's admission to the use of physical discipline in making its best interests determination; moreover, the defendant's remaining arguments in support of his assertion were unreviewable, as he waived his claim of judicial bias, did not preserve for appeal his claim of failure to appoint proper representation for the child, and this court declined to disturb the trial court's determination of the credibility of one of the plaintiff's witnesses, as such a determination was for the trial court as trier of fact.

2. This court declined to review the defendant's challenge to the accuracy of the child support payment audits: the issue of past child support payments was not before the trial court, which analyzed his allegations of overpayment only in the context of its determination of the best interests of the child, did not issue any orders regarding the audits, and issued an order only concerning the defendant's future child support obligations; accordingly, there was no claim for this court to review on appeal.

Argued November 18, 2020—officially released March 23, 2021

*Procedural History*

Motion for modification of custody as to the parties' minor child, brought to the Superior Court in the judicial district of Hartford, where the court, *Prestley, J.*, denied the motion; thereafter, the court, *Olear, J.*, denied the defendant's motion for reconsideration, and the defendant appealed to this court. *Affirmed.*

*Angel L. Cortes*, self-represented, the appellant (defendant).

*Opinion*

LAVINE, J. The self-represented defendant, Angel L. Cortes (father), appeals from the judgment of the trial court denying his motion to modify his child's primary residence to his residence from that of the plaintiff, Daisy G. Batista (mother).[1] On appeal, the father (1) claims, in essence, that the court abused its discretion by concluding that it was in the child's best interests that she continue to reside primarily with her mother and (2) challenges the results of several payment audits showing that he owes an arrearage in child support. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties, who have never married one another, are the parents of a child born in 2004. The mother lives in Florida and the father lives in Connecticut. On December 7, 2006, the parties entered into a court-approved parenting plan agreement that provided that they share joint legal custody of the child, who lives primarily with the mother. An August 20, 2008 court order set forth a child support obligation of $71 per week for the father.

On May 7, 2018, the father filed a motion for contempt, seeking to revise the parenting plan agreement, which he alleged that the mother had violated by keeping the child from him. In that motion, the father also requested that the child reside primarily with him and that the mother repay him for what he alleged was his overpayment of child support over the years due to misrepresentations made by the mother. Following a hearing on August 7, 2018, the court, *Prestley, J.*, ordered visitation for the father during the holidays. At that hearing, the father accused the mother of using corporal punishment against the child.[2] The court immediately indicated that it was referring the matter to the Department of Children and Families (department) and appointed a guardian ad litem to interview the child regarding the father's allegations.

On September 7, 2018, the father filed a motion to modify custody, which is the subject of the present appeal. In his motion, the father sought to modify the primary residence of the child, alleging that the guardian ad litem believed that it was in the child's best interests for her to live with him, that he had new employment that would permit him to spend time with the child, and that he had concerns about the child's physical safety while residing with her mother.[3] The father did not request a modification of child support in that motion.

The court held a hearing on the father's motion to modify custody, extending across two days on April 11, 2019, and June 3, 2019. During the course of the proceeding, further facts came to light concerning the father's previous allegation that he has been overpaying

child support.[4] The court told the father that it could not rule on the issue of whether his arrearage was correct and that he needed to request that the child support enforcement office conduct audits of his past payments. The court, however, took the matter into consideration insofar as it related to the motion to modify custody before it. In doing so, the court heard evidence from child support enforcement officers regarding the accuracy of new audits the father had requested pursuant to the court's direction. At the conclusion of the hearing, the court commended both parents for their devotion to the child but emphasized that it would need to make a difficult decision focused on the child's best interests. On June 12, 2019, the court issued a memorandum of decision denying the father's motion to modify custody.

In its decision, the court analyzed the child's situation with respect to both parents. The court found that the child wanted to live with her father to get to know him better. She reported feeling more "stressed" with her mother, who "has high expectations of [the child], wants her to go to college and they argue a lot." The mother worked two jobs to support her family, which reduced her availability to her children and resulted in frequent moves for the family and school changes for her children. She had received a promotion, however, which would allow her to work only one job and move to a larger apartment. The court found that the father's child support payments were then $6533.11 in arrears and that the mother's financial difficulties over the years were largely attributable to the father's failure to pay child support.

The court described the mother's belief that a move would cause upheaval in the child's life and that the child would not be college bound or realize her potential in the father's care. The court found that the guardian ad litem had "testified to her difficulty in making a recommendation on this motion because of the fact that the child is doing well academically in the [mother's] care, is a very good kid raised for the most part by the [mother] and that there are high expectations for her in her mother's care. At the same time, the child is a lot like her father, desires to come to Connecticut to live with him and her relationship with the [mother] can be difficult." The court found that the father had claimed that "on one occasion, the [mother] had struck the child in the face" and that the father's girlfriend had expressed concerns that the child had "reported an instance when the [mother] pulled [the child's] hair and grabbed the back of her neck." The court, however, did not make further findings regarding these allegations.

The court applied the factors set forth in General Statutes § 46b-56 (c)[5] to determine the best interests of the child, emphasizing its consideration of "the child's

past and present interactions with each parent and sibling, the importance of maintaining continuity in her home, school and community environment, the child and parent's preferences and the length of time that the child has lived in a stable and satisfactory environment." It found that the child has lived in the sole care of the mother for most of her life, is doing well in school, and has a younger brother with whom she could lose contact if she lived with the father. The child has spent time with her father in the summer when he had been unemployed, but he currently works a full-time job. The father has been supported by his significant other when he is not working and has paid little to no child support to the mother, resulting in her struggles to provide for the child. The court recognized the child's desire to spend more time with her father but pointed out that the early teenage years can be difficult for a child and that the beginning of high school is not the best time for a child to undertake a drastic change in living and family situations. The court thus denied the motion and ordered that the parties continue to share joint legal custody of the child, whose primary residence will continue to be in Florida with the mother and who will continue to visit the father.[6] The court also increased the father's weekly child support obligation to $95 per week, plus arrearage payments. On June 21, 2019, the father filed a motion for reconsideration, which was denied by the court, *Olear*, *J*.[7] This appeal followed.

On appeal, the father claims that the court erred in denying his motion to modify the child's primary residence and in failing to examine his alleged overpayment of child support. We do not agree.

The standard of review in family matters is well settled. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *LeSueur* v. *LeSueur*, 186 Conn. App. 431, 437–38, 199 A.3d 1082 (2018). "[Section] 46b-56 provides trial courts with the statutory authority to modify an order of custody . . . . Before a court may modify a custody order, it must find that there has been a material change in circumstances since the prior order of the court, but the ultimate test is the best interests of the child." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Clougherty* v. *Clougherty*, 162 Conn. App. 857, 868–70, 133 A.3d 886, cert. denied, 320 Conn. 932, 134 A.3d 621 (2016), and cert. denied, 320 Conn. 932, 136 A.3d 642 (2016).

I

The father challenges the court's conclusion that it was in the child's best interests to remain with her mother in Florida. He raises four arguments in support, namely, that the court (1) failed to act properly in response to allegations that the mother engaged in corporal punishment, (2) exhibited bias against him and in favor of the mother, (3) failed to appoint proper representation for the child, and (4) improperly credited the testimony of the mother's witness.

The father first argues that the court "did not properly act" on learning that the mother had used corporal punishment, "because proper investigations were not completed; and the expected urgency was not in place." He asserts, without providing any evidence whatsoever, that no investigation resulted from the court's decision to refer the matter to the department in August, 2018, which he claims "goes against [General Statutes §] 46b-6."[8]

Our review of this matter discloses that the father has neither pointed to anything in the record to demonstrate that the department failed to act on the court's referral nor asked the trial court for an articulation concerning this referral. The trial court did not make any specific findings concerning the results of its referral to the department. The record demonstrates, however, that the court referred the matter to the department and that it appointed a guardian ad litem for the child, who testified extensively at the hearing on the motion to modify custody. Although the father relies on the fact that the court's memorandum of decision does not address the department referral or discuss the mother's concession to having struck the child,[9] we are unable to assess what impact either the referral or the concession had on the court's decision.

This court cannot find facts. "As a reviewing court, [w]e cannot act as a [fact finder] or draw conclusions of facts from the primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found, thereby establishing that the trial court could reasonably conclude as it did." (Internal quotation marks omitted.) *Osborn* v. *Waterbury*, 197 Conn. App. 476, 482, 232 A.3d 134 (2020), cert. denied, 336 Conn. 903, 242 A.3d 1010 (2021). The record clearly demonstrates that the court made the referral and that it appointed a guardian ad litem. The record also is clear that the father did not ask the court to articulate whether, or to what degree, it took into account in its best interests analysis the mother's admission and the results of the department referral. "It is the responsibility of the appellant to provide an adequate record for review." Practice Book § 61-10 (a); see also Practice Book § 60-5. "Absent evidence to the contrary, we assume that the trial court

acted properly." *LeSueur* v. *LeSueur*, 172 Conn. App. 767, 785–86, 162 A.3d 32 (2017). The court's custody determination rests on multiple unchallenged factual findings, such as the child's academic performance, her relationship with her sibling, the parents' financial circumstances, and the history of the child's relationship with her mother. See General Statutes § 46b-56 (c). On the basis of the record provided, there is every indication that the court properly assessed the relevant factors, and there is nothing in the record to support the father's allegation that the court failed to consider in rendering its decision the referral it had made to the department or the mother's concession. Accordingly, we will not second-guess the court's conclusion, which is fully supported by the court's factual findings.

The father's second, third, and fourth arguments in support of his first claim, set forth previously, are unreviewable for the following reasons.

First, the father waived his argument that the court was "overly critical" of him and "did not give the same treatment" to the mother. He contends that, despite his multiple complaints concerning the mother, including that she had admitted to physically disciplining the child, the court demonstrated "presumptuous judgment" against him by ruling in favor of the mother. We construe this hard-to-interpret claim as one of judicial bias. At the outset, we note that "[a]dverse rulings do not themselves constitute evidence of bias." (Internal quotation marks omitted.) *In re Omar I.*, 197 Conn. App. 499, 571, 231 A.3d 1196, cert. denied, 335 Conn. 924, 233 A.3d 1091, cert. denied sub nom. *Ammar I.* v. *Connecticut*, U.S. , 141 S. Ct. 549, 208 L. Ed. 2d 173 (2020). "It is well settled that [c]laims alleging judicial bias should be raised at trial by a motion for disqualification or the claim will be deemed to be waived." (Internal quotation marks omitted.) *DeMattio* v. *Plunkett*, 199 Conn. App. 693, 724, 238 A.3d 24 (2020). At no time during the proceeding did the father ask the judge to recuse herself or move to disqualify the judge. He, therefore, has waived this complaint.

The father also contends that the court failed to appoint proper representation for the child pursuant to General Statutes § 46b-54.[10] We decline to address this claim because it was not preserved for appeal. Our review of the record reveals that the parties consented to the guardian ad litem's appointment, the appointment was extended several times, and the guardian ad litem participated extensively in the proceedings. At no point during the proceedings did the father contest the appointment of the guardian ad litem or request that counsel be appointed for the child. "[A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court."

(Internal quotation marks omitted.) *Silver Hill Hospital, Inc.* v. *Kessler*, 200 Conn. App. 742, 753, 240 A.3d 740 (2020); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

The father also challenges the credibility of Rachel Cortes, the child's aunt, whom the mother called as a witness. In its memorandum of decision, the court questioned the father's credibility, in part on the basis of Cortes' testimony. The father now argues that the court could not have credited the witness because she has had very little contact with the child during the previous three years. It is well settled that "[w]e must defer to the finder of fact's evaluation of the credibility of the witnesses that is based on its invaluable firsthand observation of their conduct, demeanor and attitude. . . . Because it is the sole province of the trier of fact to assess the credibility of witnesses, it is not our role to second-guess such credibility determinations." (Citation omitted; internal quotation marks omitted.) *State* v. *Shin*, 193 Conn. App. 348, 359, 219 A.3d 432, cert. denied, 333 Conn. 943, 219 A.3d 374 (2019). This court will not disturb the credibility determinations of the trier of fact.

## II

The father's second claim on appeal is that the court did not properly consider his claim of child support overpayment. In response to the mother's accusation that he was behind on child support payments, the father asserted that Florida and Connecticut had insufficiently credited him for payments he made and that the mother was receiving extra money and not reporting it. We construe the father's claim as a challenge to the accuracy of the child support payment audits he has received. Because the issue of past child support payments was not before the trial court and it did not rule on the audits, we decline to review the claim.

The following additional facts are relevant to our decision regarding the reviewability of this claim. The father insisted throughout the proceedings that he had requested new audits from the support enforcement office in accordance with the court's direction but that the audits continued to show an incorrect arrearage. The court, after directing the father on December 13, 2018, to consult child support enforcement, called representatives from the support enforcement office into the hearing on April 11 and June 3, 2019, to review the father's child support records.[11] Both support enforcement officers confirmed the accuracy of the father's arrearage, and the court credited their testimony, twice stating that the father would need to resolve any further disagreements on the matter with support enforcement. The court also reviewed the relevant documents on the record and heard testimony from the parties.

In its memorandum of decision, the court discussed the father's child support situation. Despite being ordered to pay child support of $71 a week—an obligation that the court noted was an amount "well below a minimum wage child support order"—the father had an arrearage of $6533.11 in his support obligation as of May 15, 2019. The court found that "the [mother] has been unable to provide material things and optimal housing such as a separate room for the child, things provided by the [father] in Connecticut, because the [mother] has struggled financially as the sole supporter of this child for most of the child's life." The court questioned the father's credibility, finding that the father had "repeatedly claimed . . . that he has over-paid support for the child with *no evidence to support such a claim*." (Emphasis added.) Two separate audits of the father's payments in Connecticut and in Florida had supported the court's finding that an arrearage existed, but the father did not accept the audits' conclusion. The court modified the father's child support obligation in its order.

Our review of the record discloses that the trial court did not issue any orders regarding the audits of previous child support payment history, although it did issue an order directed to future payments. The present case came before the trial court on a motion to modify the allocation of physical custody.[12] The trial court thus analyzed the father's allegations of overpayment solely in the context of its best interests determination. The court's findings concerning child support were made in support of its determination that it was in the child's best interests to remain with her mother. All of its orders, save the order increasing the amount of future child support payments, deal with custody and parenting arrangements. The father's claim, in contrast, solely concerns the accuracy of child support audits of his previous payments.[13] Because the trial court issued no orders concerning audits of previous payments, only an order concerning the father's future child support payment obligations, there is nothing for this court to review on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The mother did not file a brief in this court. We therefore decide the appeal on the basis of the record and the father's brief and oral argument. See *Rosario* v. *Rosario*, 198 Conn. App. 83, 84 n.1, 232 A.3d 1105 (2020).

[2] The father asserted that the mother had struck the child, which the mother acknowledged having done.

[3] The mother did not file a written response but participated in the hearing on the motion.

[4] The father contended that he had requested various child support audits over the years, all of which incorrectly failed to credit him for his payments.

[5] General Statutes § 46b-56 (c) sets forth sixteen factors for the court to consider in making orders concerning the custody, care, education, visitation and support of children and provides in relevant part that "[i]n making or modifying any order as provided in subsections (a) and (b) of this section,

the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of the following factors . . . . The court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision."

[6] The court also issued orders concerning transportation costs, sibling contact, counseling, tax exemptions, insurance, and jurisdiction over post-majority educational support. None of those orders is at issue in this appeal.

[7] In his motion for reconsideration, the father disputed various factual findings made by Judge Prestley in her custody determination and insisted that he could provide further evidence with which he could prove the inaccuracy of the audits reviewed by the court showing his child support arrearage.

[8] General Statutes § 46b-6 provides in relevant part: "In any pending family relations matter the court or any judge may cause an investigation to be made with respect to any circumstance of the matter which may be helpful or material or relevant to a proper disposition of the case. Such investigation may include an examination of the parentage and surroundings of any child, his age, habits and history, inquiry into the home conditions, habits and character of his parents or guardians and evaluation of his mental or physical condition. . . ."

[9] Although the court's memorandum of decision did not mention the mother's admission of corporal punishment, we note that the court acknowledged in its decision the allegations of corporal punishment against the mother made by the father and his girlfriend.

[10] General Statutes § 46b-54 provides in relevant part: "(a) The court may appoint counsel or a guardian ad litem for any minor child . . . if the court deems it to be in the best interests of the child . . . . (b) Counsel or a guardian ad litem for the minor child or children may also be appointed . . . when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy . . . ."

[11] The court asked, at the start of the April 11, 2019 hearing, if the father had requested an accounting from support enforcement, to which the father replied in the affirmative. The court informed the father that his child support arrearage was an issue he would have to resolve with the state separately, rather than with the court during the motion to modify custody orders. At the resumption of the hearing on June 3, 2019, the father stated that he had consulted with support enforcement again.

[12] The father did not file a motion to address his alleged overpayment of child support. He previously challenged it in his May 7, 2018 postjudgment motion for contempt, but the trial court issued an order resolving that motion on August 7, 2018, and the father has not challenged that disposition.

[13] In his statement of the issues, the father specifically defines the issue as follows: "Did the trial court properly examine [his] claim of his *overpayment* of child support?" (Emphasis added.) In the main portion of his brief, he sets forth the issue as: "The trial court did not properly consider the [father's] claim of overpayment of child support." He questions if the "numerous audits on his case . . . are done properly" and asks that "a proper audit be [conducted] of his child support payments with both the state of Connecticut and the state of Florida's histories." We thus construe his claim, as briefed, to challenge only the audits of *past* payments. He has not set forth a claim regarding the court's modification of his child support amount.