******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

M. C. *v.* A. W.*
(AC 46223)

Alvord, Moll and Clark, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving his marriage to the plaintiff and entering certain financial orders. *Held*:

1. This court declined to review the defendant's unpreserved claim that the trial court committed error by failing to recuse itself and by demonstrating judicial bias as the record was not adequate for review: the defendant failed to file a motion to disqualify the judge presiding over the action at any time prior to the dissolution judgment; moreover, contrary to the defendant's claim that he preserved the issue by virtue of his trial counsel raising it to the judge in chambers, there was no record of such conversation, and the defendant failed to file a motion for rectification to preserve any such conversation; furthermore, the claim could not be reviewed for plain error because there was no evidence indicating that the purported colloquy between the parties and the judge in chambers in relation to the recusal issue actually occurred nor was there any evidence of bias by the judge.

2. The defendant could not prevail on his claim that the trial court made clearly erroneous factual findings in support of its financial and property distribution orders; the court's findings as to the plaintiff's health and how the plaintiff conducted her business were supported by evidence in the record.

3. The defendant could not prevail on his claim that the trial court did not adequately consider the plaintiff's noncompliance with the court's discovery orders in entering its financial and property distribution orders: the court expressly found that the plaintiff was uncooperative vis-à-vis discovery and that she delayed, or wholly withheld, financial information, and the decision further reflected that the court considered the plaintiff's discovery noncompliance to the detriment of the plaintiff, as the court awarded no alimony to either party, which aligned with the defendant's operative proposed orders and which reflected a rejection of the plaintiff's request in her proposed orders to award alimony; moreover, there was no merit to the defendant's contention that the court

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

improperly declined to rule on three motions for contempt, as the record demonstrated that the defendant expressly withdrew those motions.

4. The defendant could not prevail on his claim that the trial court inequitably distributed the parties' assets: the court did not abuse its discretion in allocating the parties' assets as, contrary to the defendant's assertions, a review of his operative proposed orders and the court's final orders reflected that many of the defendant's requested orders were awarded in full or in part; moreover, the court was not obligated to apply any set formula when dividing the parties' assets so long as it considered the required factors under the statute (§ 46b-81) governing the distribution of assets in a dissolution case, which, as was expressly set forth in its decision, the court did.

Argued January 31—officially released July 2, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the defendant filed a counterclaim; thereafter, the matter was tried to the court, *Grossman, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court. *Affirmed.*

*Terence J. Gallagher*, with whom was *A. W.*, self-represented, for the appellant (defendant).

*Meagan A. Cauda*, with whom was *Dana M. Hrelic*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendant, A. W., appeals from the judgment of the trial court dissolving his marriage to the plaintiff, M. C. On appeal, we distill the defendant's claims to be that the court (1) failed to recuse itself on the basis of an alleged conflict of interest, (2) made clearly erroneous factual findings in support of its financial and property distribution orders, (3) failed to consider adequately the plaintiff's noncompliance with the court's discovery orders in entering its financial and

property distribution orders, and (4) improperly distributed the parties' assets.[1] We affirm the judgment of the trial court.

The following facts, which are not in dispute, and procedural history are relevant to our resolution of this appeal. The plaintiff and the defendant are both attorneys admitted to practice law in Connecticut. The parties were married on January 4, 1995. Two children were born of the marriage, both of whom were over the age of twenty-three at the time of the dissolution judgment. On April 8, 2020, the plaintiff commenced the present dissolution action against the defendant on the ground that the parties' marriage had broken down irretrievably. On May 7, 2020, the defendant filed an answer and a counterclaim for dissolution of marriage on the same ground.

The matter was tried to the trial court, *Grossman, J.*, over the course of five days in March, September, and November, 2022. The court heard testimony from the parties and other witnesses and admitted several full exhibits. The parties also submitted proposed orders. At the conclusion of trial on November 7, 2022, the parties requested an immediate dissolution of their marriage, which the court granted, subject to the court issuing orders at a later date relating to the parties' finances and marital property.

On December 22, 2022, the court issued a memorandum of decision in connection with the judgment of dissolution. At the outset, the court stated that it made its factual findings "[u]pon careful consideration of the evidence presented, the court file, and the pertinent statutory law, in particular, General Statutes §§ 46b-82,

---

[1] The defendant raises six claims on appeal, which we boil down to the claims described in this opinion. For the purpose of clarity, we address these claims in a different order than they are set forth in the defendant's principal appellate brief.

46b-81, and 46b-87, and the relevant case law, and having observed the demeanor and assessed the credibility of the parties and witnesses . . . ." The court found that most of the testimony adduced at trial was credible, including testimony provided by the defendant and the fact witnesses. In addition, the court stated that the plaintiff's testimony was not wholly reliable and stated that at times it did not find her credible. The court then entered several financial and property distribution orders as part of the dissolution judgment. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We begin with the defendant's claim that the Honorable Jane K. Grossman committed error by failing to recuse herself from presiding over the present dissolution action and by demonstrating judicial bias. Specifically, the defendant argues that "[Judge Grossman's] long-term personal and professional relationship with the plaintiff" biased the court in favor of the plaintiff, including in issuing the financial and property distribution orders. We decline to review this unpreserved claim because the record is not adequate for review.

As a preliminary matter, we deem the defendant's recusal claim to be unpreserved. The defendant did not file a motion to disqualify Judge Grossman at any time prior to the dissolution judgment.[2] See *State* v. *Cane*, 193 Conn. App. 95, 133, 218 A.3d 1073 ("[i]t is a well settled general rule . . . that courts will not review a claim of judicial bias on appeal unless that claim was

_____

[2] On August 29, 2023, after having filed this appeal, the defendant filed a motion seeking to recuse Judge Grossman from hearing any posttrial motions in the present action, including the plaintiff's motion to terminate the automatic appellate stay. The defendant's filing of the postjudgment motion to recuse has no bearing on the question of whether the defendant preserved the recusal issue prior to the judgment of dissolution, from which the defendant has appealed.

properly presented to the trial court via a motion for disqualification or a motion for mistrial" (internal quotation marks omitted)), cert. denied, 334 Conn. 901, 219 A.3d 798 (2019). Nevertheless, in his principal appellate brief, the defendant maintains that he preserved this issue by virtue of his trial counsel raising it to Judge Grossman in chambers.[3] We disagree, as there is no record of the purported conversation in chambers, and the defendant has failed to file a motion for rectification to preserve any such conversation. See *Moyher* v. *Moyher*, 198 Conn. App. 334, 341, 232 A.3d 1212 (motion for rectification could have been filed pursuant to Practice Book § 66-5 to attempt to preserve discussions in chambers), cert. denied, 335 Conn. 965, 240 A.3d 284 (2020).

The defendant requests that we review his recusal claim, if unpreserved, for plain error.[4] The recusal claim cannot be reviewed for plain error, however, because the defendant has failed to present us with an adequate record.[5] See *State* v. *Kyle A.*, 348 Conn. 437, 446, 307

---

[3] The defendant's appellate counsel stated during oral argument that the issue of Judge Grossman's recusal was "raised with the court in chambers on the morning of the first day of the trial." However, counsel represented that (1) "there was no transcript" of this discussion, (2) the in-chambers request was denied, and (3) following the court's denial of the in-chambers request, the defendant did not raise the issue on the record because it purportedly was rendered moot by the denial.

[4] "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Taveras*, 219 Conn. App. 252, 269, 295 A.3d 421, cert. denied, 348 Conn. 903, 301 A.3d 527 (2023).

[5] During oral argument, reference was made to review of the defendant's unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Insofar as the defendant seeks *Golding* review as well,

A.3d 249 (2024) ("An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [A] complete record and an obvious error are prerequisites for plain error review . . . ." (Citation omitted; internal quotation marks omitted.)); see also Practice Book § 61-10 (a) ("[i]t is the responsibility of the appellant to provide an adequate record for review"). The defendant has not cited in the record, and our review of the record has not revealed (1) any evidence indicating that the purported colloquy between the parties and Judge Grossman in chambers in relation to the recusal issue actually occurred[6] or (2) any evidence of bias by Judge Grossman otherwise. The only support offered by the defendant is counsel's representations, which are insufficient.[7] See *Magana* v. *Wells Fargo Bank, N.A.*, 164 Conn. App. 729, 734, 138 A.3d 966 (2016) ("representations of counsel are not evidence and are certainly not proof" (internal quotation marks omitted)). We conclude, therefore, that the record is inadequate to review this claim and, accordingly, we decline to review it.

the lack of an adequate record also prevents such review. See *S. A.* v. *D. G.*, 198 Conn. App. 170, 196 n.21, 232 A.3d 1110 (2020) (first prong of *Golding* requires adequate record to review alleged claim of error).

[6] The defendant states in his principal appellate brief that "the court was made aware of the appearance [of] impropriety in hearing this case at trial at the outset. [The defendant's trial counsel] discussed this matter in chambers with Judge Grossman, reminding her of a discussion she had with both of the litigants at a party at her home, which both the plaintiff and the defendant were invited [to] as guests, as were their then minor children . . . . Judge Grossman . . . advised both parties that she could not hear any cases in which they represented parties." The defendant further states that Judge Grossman commented in chambers that she was " 'fond' " of both parties.

[7] The defendant also asserts that Judge Grossman's adverse rulings against him reflected bias. This assertion is untenable. See *Batista* v. *Cortes*, 203 Conn. App. 365, 373, 248 A.3d 763 (2021) ("[a]dverse rulings do not themselves constitute evidence of bias" (internal quotation marks omitted)).

## II

We next address the defendant's remaining claims, which, in essence, challenge the court's financial and property distribution orders. The defendant contends that the court (1) made clearly erroneous factual findings, (2) failed to account adequately for the plaintiff's noncompliance with the court's discovery orders, and (3) inequitably allocated the parties' assets. These claims are unavailing.

Before turning to the defendant's claims, we set forth "[t]he standard of review in domestic relations cases [which] is well established. [T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *Buchenholz* v. *Buchenholz*, 221 Conn. App. 132, 142–43, 300 A.3d 1233, cert. denied, 348 Conn. 928, 304 A.3d 860 (2023).

## A

The defendant asserts that the court made factual findings in support of its financial and property distribution orders that were clearly erroneous. We disagree.

The following additional procedural history is relevant to our resolution of this claim. In entering its financial and property distribution orders, the court made several findings regarding the plaintiff. As to her health, the court found that "[t]he plaintiff is fifty-eight years old . . . [and] in poor health. For most of the marriage, she struggled with alcoholism; this impaired her judgment and her memory. She is experiencing serious medical complications. Only an organ transplant can extend her life and the likelihood of such a transplant is low." With respect to her income, the court found in relevant part that "[t]he evidence demonstrated that [the plaintiff] spends beyond her stated income without increasing her debt and that she conducts business in cash, which goes unreported."

The defendant argues that the court committed clear error in finding that (1) "[o]nly an organ transplant can extend [the plaintiff's] life and the likelihood of such a transplant is low," and (2) the plaintiff "conducts business in cash, which goes unreported." With respect to the plaintiff's health, the defendant asserts that the court's findings are unsupported by the record. With respect to the plaintiff's income, the defendant asserts that, "[w]hile the information to support that [finding] may exist by inference, it was . . . not a stated [finding] or admission in the record of the trial." We conclude that these findings are supported by the evidence in the record.

With respect to the court's findings concerning the plaintiff's health, the plaintiff testified that (1) she has had many medical problems and requires a liver transplant, (2) she has "end stage liver disease," which is a

"terminal illness," (3) at the time of her testimony during trial in March, 2022, she was "put on pause" with respect to a liver transplant list, although she would "be going back on the list," and (4) "there haven't been many livers available during [the COVID-19 pandemic] . . . ." Although the court noted in its decision that it "was unable to rely on all of the plaintiff's testimony and at times did not find [the plaintiff] credible," it also determined that "[m]ost of the testimony received by the court was credible . . . ." As we have explained, the court's decision "may include implicit findings that it resolved any credibility determinations and any conflicts in testimony in a manner that supports its ruling." (Internal quotation marks omitted.) *Buchenholz* v. *Buchenholz*, supra, 221 Conn. App. 147; see also *Delena* v. *Grachitorena*, 216 Conn. App. 225, 231, 283 A.3d 1090 (2022) ("[i]t is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony" (internal quotation marks omitted)). We will not disturb the court's credibility determinations on appeal. See id. Moreover, the defendant acknowledged the plaintiff's health problems in his testimony, including that the plaintiff had been seeking a liver transplant. We conclude, therefore, that the court's finding as to the plaintiff's health is not clearly erroneous.[8]

---

[8] The defendant asserts that the plaintiff did not submit any medical evidence to support her testimony regarding her medical issues. Insofar as the defendant claims error on this basis, we construe the defendant's argument, in essence, to seek that we retry the facts and evaluate the plaintiff's credibility, which we decline to do. See *Anketell* v. *Kulldorff*, 207 Conn. App. 807, 848, 263 A.3d 972 ("The defendant essentially requests that we reweigh [the] evidence in his favor. [W]e do not retry the facts or evaluate the credibility of witnesses." (Internal quotation marks omitted.)), cert. denied, 340 Conn. 905, 263 A.3d 821 (2021).

In addition, the defendant appears to question on appeal the "terminal" nature of the plaintiff's medical issues, observing that she remained alive at the time that he filed his principal appellate brief. We decline the defendant's apparent invitation to take the plaintiff's current health status into consider-

With respect to the court's finding that the plaintiff conducted business in cash, which went unreported, the court heard testimony from the defendant stating that, while the parties were married, the plaintiff would have him "do bank deposits for her . . . ." The defendant's testimony described how, "if [business checks] were made payable to [the plaintiff], [she] would . . . sign the back of the check and ask [him] to cash it and then bring her the cash." The court also heard testimony from a client of the plaintiff stating that she addressed several payment checks to the plaintiff personally, rather than to the law firm, and that, although she had not paid the plaintiff since September, 2021, the plaintiff represented her and/or performed legal work for her sometime after September, 2021. In addition, several exhibits purporting to chart the plaintiff's various sources of income discrepancies from 2019 to 2021, as derived from her bank statements, were admitted in full. The exhibit charting her "2021 bank and credit card statements," for example, indicates that certain sums of funds appearing on the statements were deposited from sources "unknown." As the defendant concedes in his principal appellate brief, the court reasonably may have drawn inferences on the basis of the evidence to reach its findings relating to the plaintiff's business and income. See *Giordano* v. *Giordano*, 203 Conn. App. 652, 657, 249 A.3d 363 (2021) ("[i]t is within the province of the trial court to find facts and *draw proper inferences from the evidence presented*" (emphasis added; internal quotation marks omitted)).

In sum, we conclude that the court's findings are supported by the record and, therefore, not clearly erroneous.[9]

---

ation in determining whether the court committed error in entering its financial and property distribution orders.

[9] The defendant suggests that, in light of the alleged lack of evidence in the record to support the court's findings, the court must have based its findings on ex parte communications. In light of our determination that

B

The defendant also asserts that the court did not adequately consider the plaintiff's noncompliance with the court's discovery orders in entering its financial and property distribution orders. Additionally, in connection with this assertion, the defendant contends that the court improperly declined to rule on three contempt motions that he had filed.[10] We are not persuaded.

The following additional procedural history is relevant. On March 29, 2021, the court entered orders, without prejudice to either party, adjudicating discovery disputes between the parties and requiring the parties to produce various discovery materials. Pursuant to Practice Book § 25-32B,[11] the court subsequently appointed a discovery special master to assist the parties with resolving discovery disputes.

Prior to the third day of trial on September 20, 2022, both parties filed motions for contempt. Specifically, on September 14, 2022, the defendant filed a motion for contempt claiming that the plaintiff had failed to comply with the court's discovery orders. On September 19, 2022, the plaintiff filed a motion for contempt predicated on the defendant's alleged noncompliance

the court's findings were not clearly erroneous, we find no merit to this contention.

[10] We note that the defendant filed his principal appellate brief as a self-represented party. His appellate counsel subsequently filed an appearance prior to oral argument.

In the defendant's principal appellate brief, which is not a model of clarity, the defendant refers to several motions that he filed in the present action. We construe comments made by the defendant's appellate counsel during oral argument to limit the defendant's claim concerning the court's refusal to rule on his motions to three contempt motions, which we discuss later in this portion of the opinion.

[11] Practice Book § 25-32B provides: "The judicial authority may appoint a discovery special master to assist in the resolution of discovery disputes. When such an appointment is made, the judicial authority shall specify the duties, authority and compensation of the discovery special master and how that compensation shall be allocated between the parties."

with discovery. On September 19, 2022, the defendant filed a motion for contempt asserting that the plaintiff had violated the court's automatic orders by withdrawing $50,000 from a retirement account without the defendant's consent.

At the outset of the proceedings on September 20, 2022, the parties and the court discussed the defendant's September 14, 2022 motion for contempt claiming discovery noncompliance by the plaintiff. During the discussion, the court commented that "[t]his case has been dragging on. The parties have an obligation to continue to exchange discovery while it drags on. At some point soon, I think I'm going to have to consider some remedies for not disclosing discovery. . . . So, look, at some point, [the plaintiff] might be precluded from putting on this evidence. I might make some adverse inferences if discovery's not produced. . . . I've got a case that's, I don't know, three years old. So I think all those options are on the table . . . . So [the plaintiff] can decide how she wants to handle it. She risks those penalties. She certainly risks some counsel fees for . . . payment of these motions if I find her in contempt for . . . violating discovery rules. But I'm certainly not gonna hold up trial. . . . [W]e have to move on. There can't be a lot between [the parties] that . . . isn't clear other than maybe what the current income is for [the plaintiff's] practice. And if she doesn't disclose it, then I guess some assumptions will be made by the court about why it wasn't disclosed." The court further noted that the defendant's September 14, 2022 motion remained before it and inquired whether there were any other motions to be addressed before the evidentiary portion of trial resumed. The plaintiff's trial counsel responded "[n]o," while the defendant's trial counsel suggested that the court address the defendant's other motions "if and when we readdress [the defendant's September 14, 2022] motion for contempt."

During the fourth day of trial on September 21, 2022, referencing the discussion from the prior day, the court commented that, "if [the plaintiff] doesn't produce the documents pursuant to valid requests and a number of orders . . . the court has a number of options available to it, including adverse inferences and including preclusion. And we haven't gotten into any of that yet because . . . I haven't heard from [the plaintiff] about those items. But . . . in my view, it has not changed." The court further commented that it was "disappointing and distressing" to see "two members of the bar who are credibly accused of not following all of the rules of practice regarding the exchanging of discovery . . . ."

Later in the day, the defendant's trial counsel requested that the court order a deadline by which the plaintiff had to comply with outstanding discovery. The plaintiff's trial counsel responded that the plaintiff was working on discovery compliance and that counsel would attempt to assure compliance by the following week. The court then stated that "[there have been] [o]utstanding discovery requests [i]n a case that is many years old and there are multiple orders for people to produce. So, as far as I'm concerned, all the motions to compel, all the motions for sanctions, and all the motions for remedy regarding the failure to produce documents are before the court. . . . I'm not delaying this trial or issuing any more deadlines. . . . If [the plaintiff] doesn't produce them, all remedies are available to [the defendant]. I may still, because they are produced late, make some adverse inferences or . . . issue some sanctions or shift some fees in either direction . . . . So, all the options are available. . . . If [the defendant's trial counsel doesn't] have enough time to go through [the production] . . . I will certainly hear [him] out about how that should impact my order for sanctions."

On November 1, 2022, the defendant filed an amended motion for contempt, ostensibly in relation to his September 14, 2022 motion for contempt, asserting that, notwithstanding some recent discovery compliance, the plaintiff had failed to comply fully with the court's discovery orders. The defendant requested as relief that the court order the plaintiff to provide full discovery compliance immediately and to pay reasonable attorney's fees and costs pursuant to General Statutes § 46b-87.

At the outset of the final day of trial on November 7, 2022, the court inquired whether there was anything to address before the evidentiary portion of trial resumed. The defendant's trial counsel made reference to pending motions for contempt, but there was no request to address the motions at that time.

During closing arguments, prior to the start of the plaintiff's rebuttal, the court noted that "the plaintiff's [operative] proposed orders are not asking for any ruling on any of [the] pendente lite motions" whereas the defendant's operative proposed orders suggested that there were pending motions to resolve.[12] The defendant's trial counsel responded that the court could consider the motions on the papers. The plaintiff's trial counsel, in turn, stated that she "thought [the parties] were not proceeding on the motions . . . ." The following colloquy then occurred:

[12] On November 3, 2022, the defendant filed an amended list of pending motions. The motions that were referenced therein included (1) the defendant's motion for contempt dated June 24, 2020, (2) the defendant's motion for sanctions dated September 17, 2020, (3) the defendant's motion for sanctions dated October 5, 2020, (4) the defendant's motion for sanctions and finding of per se bad faith dated November 14, 2020, (5) the defendant's November 1, 2022 amended motion for contempt, along with the defendant's September 14, 2022 motion for contempt, (6) the defendant's September 19, 2022 motion for contempt, (7) the plaintiff's September 19, 2022 motion for contempt, along with the defendant's objection thereto, and (8) the defendant's motion for order of compliance dated November 1, 2022.

"The Court: I thought . . . I'd heard one of the law-yers say nobody was pursuing these motions for sanc-tions or contempt regarding discovery . . . . Are you pursuing those motions? Do I need to rule on them or not? Because one set of proposed orders . . . looks like I don't, and one set of proposed orders makes it look like I do.

"[The Defendant's Counsel]: I've put my testimony on about them; I certainly have no objection to [the plaintiff's trial counsel] doing whatever she'd like to do to oppose those.

"The Court: Okay. . . . That sounds like a change in understanding from earlier. . . . I'll give you time to get back to me about it or talk to me about it . . . .

"[The Plaintiff's Counsel]: I started the day saying I won't claim [the plaintiff's] motion for contempt if [the defendant is not] claiming [his]." Following a pause in the proceedings, the defendant's trial counsel repre-sented to the court that "we're going to not have you rule on those [motions] . . . and hope that you instead concentrate on defendant's [exhibit] CCC," consisting of a spreadsheet titled "spreadsheet of marital waste," along with accompanying documents, which purported to show the total amount of "waste of [marital] assets" by the plaintiff, including the accumulation of legal fees.

During the plaintiff's rebuttal argument, the following colloquy occurred:

"[The Plaintiff's Counsel]: Discovery has not—[the plaintiff] filed [a] motion for contempt that [she] did not proceed on . . . and argument is made to Your Honor about . . . how there was no discovery; there was lots of discovery here. . . .

"[The Defendant's Counsel]: Your Honor . . . I with-drew the motions for contempt. Why are we talking about this?

"[The Plaintiff's Counsel]: Well, because you talked about it. . . . Counsel's asked [the court] to take that into account in—

"[The Defendant's Counsel]: Oh, I definitely—

"[The Plaintiff's Counsel]: —fashioning [the court's] orders.

"[The Defendant's Counsel]: —have asked [the court] to take that into account. I agree.

"[The Plaintiff's Counsel]: Yeah. And so that's why I'm commenting about it.

"The Court: And . . . there is a request for counsel fees at least from the plaintiff's side; so . . . I think I need to at least give it some thought."

In its decision issuing its financial and property distribution orders, the court did not expressly refer to any motions filed by the parties. The court did, however, address the plaintiff's discovery violations, stating: "The plaintiff is admitted to practice law in Connecticut. She is self-employed in her own practice and continued to practice and take on clients while this action was pending. The plaintiff reported a gross annual income of $30,680 from annuities. *She was not cooperative during the discovery process. She delayed production of, or withheld entirely, information related to her earnings and spending.* The evidence demonstrated that she spends beyond her stated income without increasing her debt and that she conducts business in cash which goes unreported. In 2019, her personal gross annual income was more than $90,000. Accordingly, the court finds that the plaintiff has sufficient income to support herself." (Emphasis added.) The court proceeded to order, inter alia, that (1) neither party was to pay alimony to the other party and (2) each party was responsible for his or her own attorney's fees and costs.

At this juncture, we briefly address the defendant's contention that the court improperly declined to rule on his September 14, 2022, September 19, 2022, and November 1, 2022 motions for contempt. We reject this claim because the record demonstrates that the defendant expressly withdrew these motions on the record on November 7, 2022. As the November 7, 2022 trial transcript reflects, following confusion expressed by the parties' respective trial counsel regarding the status of the contempt motions, the court stated that it had "heard one of the lawyers say nobody was pursuing *these motions for sanctions or contempt regarding discovery*" and asked directly whether it "need[ed] to rule on them or not." (Emphasis added.) The defendant's trial counsel later informed the court that "we're going to *not have* [*the court*] *rule on those* [*motions*] . . . and hope that [the court] *instead* concentrate[s] on defendant's [exhibit] CCC." (Emphasis added.) Moreover, during the plaintiff's closing argument, the defendant's trial counsel confirmed that he "*withdrew* the motions for contempt." (Emphasis added.) Further, in his principal appellate brief, the defendant makes it clear that, "[i]n discussions with the court, the defendant's [trial] counsel, based upon [the court's] prior admonishment of the parties [during trial], requested that the court deal with the issues of the contempts by focusing on the defendant's exhibit CCC . . . ." Upon the defendant's withdrawal of the motions for contempt, those motions were no longer before the court for adjudication. Accordingly, there is no merit to the defendant's claim.[13]

___

[13] During oral argument before this court, the defendant's appellate counsel asserted that the defendant did not withdraw any motions on November 7, 2022, because his trial counsel was not specific enough as to which motions the defendant intended to withdraw during that discussion. Alternatively, the defendant's appellate counsel argued that, to the extent that the defendant's trial counsel may have represented to the trial court that the defendant was withdrawing any of his outstanding motions, it was only with respect to his September 19, 2022 motion relating to the court's automatic orders,

The crux of the defendant's remaining assertion is that the court did not adequately consider the plaintiff's noncompliance with discovery in entering its financial and property distribution orders. The defendant maintains that the court "failed to hold the plaintiff accountable for her intentional and [wilful] actions frustrating the orderly process of this dissolution action." The court's decision, however, reflects that the court expressly found that the plaintiff was uncooperative vis-à-vis discovery and delayed, or wholly withheld, financial information. The decision further reflects that the court considered the plaintiff's discovery noncompliance to the detriment of the plaintiff, as the court, notwithstanding the plaintiff having a reported gross income of $30,680, determined that the plaintiff had sufficient income to support herself. We construe that determination, in turn, implicitly to have guided the court in awarding no alimony to either party, which aligned with the defendant's operative proposed orders and rejected the plaintiff's request, as reflected in her operative proposed orders, to award her alimony in the amount of $1653 per month until either party's death or the plaintiff's remarriage. Insofar as the defendant posits that the court should have relied further on the plaintiff's discovery noncompliance to enter additional orders adverse to her, we do not deem the court to have abused its broad discretion in declining to do so. Accordingly, we reject the defendant's claim.

C

The defendant next asserts that the trial court inequitably distributed the parties' assets. We disagree.

"[Section] 46b-81 governs the distribution of the assets in a dissolution case. . . . That statute authorizes the court to assign to either spouse all, or any

but not any of the motions relating to the discovery issues. In light of the record, we do not find these arguments persuasive.

part of, the estate of the other spouse. . . . In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . . Moreover, [w]e have iterated that there is no set formula the court is obligated to apply when dividing the parties' assets and . . . the court is vested with broad discretion in fashioning financial orders. . . . As a panel of this court once expressed, the court has vast discretion in fashioning its orders. . . . Generally, we will not overturn a trial court's division of marital property unless it misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard." (Citation omitted; internal quotation marks omitted.) *Wethington* v. *Wethington*, 223 Conn. App. 715, 734–35, 309 A.3d 356 (2024).

"Although the trial court must consider those factors delineated by § 46b-81 when distributing assets, *no single criterion is preferred over others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case.* . . . [Additionally, the court] *need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor.*" (Emphasis in original; internal quotation marks omitted.) *Anderson-Harris* v. *Harris*, 221 Conn. App. 222, 248, 301 A.3d 1090 (2023).

In its decision, the court found that the plaintiff (1) is in poor health, (2) struggled with alcoholism for most of the parties' marriage, which impaired her judgment and memory, (3) "is experiencing serious medical complications," (4) requires an organ transplant to extend her life, "the likelihood [of which] is low," and (5) had sufficient income to support herself. The court also found that the plaintiff (1) since 2019 has lived exclusively in the parties' marital residence in Wallingford, which is valued at approximately \$725,000 and which has no mortgage, but is subject to a home equity line of credit (HELOC) in the defendant's name alone with a balance of approximately \$50,000, and has paid the property taxes[14] and utilities since then, and (2) used to own with her father a certain limited liability company (real estate LLC), as well as company owned real property upon which an office building is situated (but for which she has not paid rent or contributed to its upkeep for many years and which she, "in fact, deliberately damaged . . . at significant costs to the defendant [who now owns the company]. The defendant is closing his practice and has no need for this office any longer. . . . The approximate net value of the property is \$130,000."). As to the defendant, the court found that he (1) lives in a West Hartford property co-owned with his sister, (2) is entitled to 75 percent of a trust with an approximate corpus value of \$600,000, subject to certain distributions and obligations, (3) has paid car insurance, homeowners insurance, and motor vehicle taxes for both parties and their children during the pendency of the present action, and (4) has sufficient income to support himself.

On the basis of its findings, the court ordered that the plaintiff (1) was awarded (a) the marital residence,

---

[14] With respect to property taxes with regard to the marital residence, the court found that, in response to a foreclosure action, the plaintiff paid \$42,000 in delinquent property taxes accrued from 2018 to 2021.

with the defendant obligated to pay the HELOC debt, as well as the homeowners insurance on the home until February 1, 2023, (b) certain real property in Hamden, (c) all interest in a certain limited liability company, (d) several vehicles, with the defendant required to pay car insurance on the parties' vehicles until February 1, 2023, (e) certain jewelry, and (f) certain furnishings and furs, and (2) would retain her retirement account and annuity accounts. The court further ordered that the defendant (1) would retain (a) the real estate LLC, subject to the requirement that he sell the real property that it owned and use the proceeds to pay off certain debts and (b) any interest in the trust, and (2) was awarded (a) his interest in the West Hartford property, (b) all interest in two other, identified limited liability companies, (c) certain vehicles, and (d) certain jewelry. Additionally, the court ordered that the parties (1) were to divide equitably the furnishings in the marital home, (2) would retain any personal property in their possession or financial accounts in their name or listed in their respective financial affidavits, not otherwise assigned by the court, and (3) were responsible for (a) their personal debts not otherwise assigned by the court, (b) their personal health insurance, and (c) their personal attorney's fees and costs.

The defendant maintains on appeal that, "[i]n this action, the issue of distribution is what is not equitable." In particular, he contends that the court's orders allocating the parties' assets "strip[ped] him of . . . the majority of the family assets earned by the parties during the course of the marriage . . . while the non-compliant . . . [plaintiff] is left with the lion['s] share of the jointly built family assets," specifically highlighting the court's allocation of the parties' marital residence to the plaintiff. We note that, contrary to the defendant's assertions, a review of his operative

proposed orders[15] and the court's final orders reflects that many of the defendant's requested orders were awarded in full or in part. For example, consistent with the defendant's operative proposed orders, the court declined to award the plaintiff alimony as she requested, which would have amounted to nearly $20,000 per year. The court also declined to award the plaintiff the amounts that she requested relating to the taxes and penalties on the marital residence; see footnote 14 of this opinion; and the parties' health insurance coverage. In any event, the court was not obligated to apply any set formula when dividing the parties' assets so long as it considered the statutorily required factors of § 46b-81; see *Anderson-Harris* v. *Harris*, supra, 221 Conn. App. 248; which, as is expressly set forth in its decision, the court did.[16] See id., 250 ("[M]aking every reasonable presumption in favor of the correctness of the trial

[15] In his operative proposed orders, the defendant requested in relevant part: (1) sole ownership of the parties' marital residence, subject to a life estate interest given to the plaintiff, and with the defendant required to pay the principal payments associated with the HELOC, (2) to retain his interest in the West Hartford property, (3) sole ownership of the real estate LLC, with the real property that it owned either (a) being retained by the defendant or (b) sold, with the defendant entitled up to $200,000 of any net proceeds following the sale and the plaintiff entitled to any remaining net proceeds, (4) to retain his interest in two other, identified limited liability companies, (5) to retain his interest in the trust, (6) that the parties retain the retirement accounts listed in their names, and (7) the plaintiff pay him $436,359.34 as compensation for her "marital waste."

[16] Moreover, notwithstanding the defendant's assertions to the contrary, the court awarded or allowed the defendant to retain substantial assets. For instance, the court ordered that the defendant (1) would retain his retirement accounts, which, per his averments in his operative financial affidavit, were valued at $544,264; (2) was awarded his interest in the West Hartford property, which, per the defendant's averments in his operative financial affidavit, was valued at $250,000; and (3) was awarded certain jewelry, which, per the defendant's averments in his operative financial affidavit, was valued at $20,000. Additionally, the court ordered that the defendant would retain his 75 percent interest in the trust with a corpus value of approximately $600,000, less certain distributions and obligations, although, as the court found, the defendant was uncertain as to when or how much he would ultimately receive.

court's orders, as we are required to do . . . we are satisfied that the court did consider these factors, even if it did not state with specificity how it weighed them. This conclusion is supported by comments made by the trial court throughout its financial orders, such as, '[h]aving considered the statutory criteria,' and, '[t]he court has closely examined the parties' financial affidavits . . . .' " (Citation omitted.)).

The defendant further contends that the court erred because it did not consider how the plaintiff's misconduct was "detriment[al] [to] the defendant financially and emotionally" or impute this impact in its financial orders. In particular, the defendant argues that the final orders reflect that the court failed to credit the defendant's evidence purporting to show "marital waste" that was committed by the plaintiff during the course of the dissolution action, as well as the evidence contained in his various prejudgment discovery motions. Insofar as the defendant invites us to reconsider the evidence that was before the court, "[w]e note that it is not the function of this court to review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . Thus, [a] mere difference of opinion or judgment cannot justify our intervention." (Internal quotation marks omitted.) *Anderson-Harris* v. *Harris*, supra, 221 Conn. App. 251.

In sum, after a careful review of the record and the defendant's contentions on appeal, we conclude that the court did not abuse its discretion in allocating the parties' assets.

The judgment is affirmed.

In this opinion the other judges concurred.